[No. 25481. Department Two. May 2, 1935.]

G. L. DUNLAP et al., *Appellants*, v. HOWARD H. HANSEN, *as State Supervisor of Banking, et al., Defendants,* NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, *Respondent.*[1]

[1]Reported in 44 P. (2d) 805.

*Louis A. Dyar* and *R. R. Cahill,* for appellants.

*Tustin & Chandler* and *Grant S. Bond,* for respondent.

MITCHELL, J.—The Hickmans, in 1932 and prior years, owned a wheat ranch of about twenty-one hundred acres in Whitman county, upon which Northwestern Mutual Life Insurance Company held three mortgages.

In 1932, Dunlap & Geiger, partners, were advised by the officers of the First Savings & Trust Bank of Colfax that a lease for a long term of years, on the usual and customary terms of one-third crop rent to the landlord, could be had of the Hickman ranch. Accordingly, they entered into an oral agreement with the bank substantially as follows: That, in consideration of $5,500, the bank would deliver to Dunlap & Geiger a farming outfit on the ranch, consisting of horses, mules, and farming machinery, and also the bank's right and interest in certain of the crop growing on the ranch; and the bank further agreed to secure for Dunlap & Geiger a written lease of the premises for a term of years. Also, it was represented that there were certain other interests in, or lien upon, the premises in favor of persons whose consent to the lease could be procured by the bank. Dunlap & Geiger, according to the agreement, paid the bank $2,000 in cash, and gave their note to the bank for $3,500, being the balance due on the $5,500 consideration to be paid by them, the note maturing on October 1, 1933.

Dunlap & Geiger were then placed in possession of the property by the bank, which, although not acting

fraudulently, it seems, was without authority to make a binding contract with Dunlap & Geiger for the real property. The owners of the real property and the mortgagee refused to ratify the arrangement made by the bank, and about March, 1933, the owners of the real property gave Dunlap & Geiger written notice that they must surrender possession and all rights in and to the real property on or before October 1, 1933. The tenants acted upon the notice as valid.

The tenants harvested the wheat on the premises, but, in the meantime, the mortgagee, Northwestern Mutual Life Insurance Company, foreclosed its mortgages and bought in the property at sheriff's sale. Dunlap & Geiger were not made parties to the mortgage foreclosure suit. After the sheriff's certificate of sale was issued to the mortgage company, Dunlap & Geiger harvested the wheat, and thereafter this suit was brought by them, claiming certain cash and warehouse receipts, proceeds of the crop of wheat in question, as belonging to them, free, among other things, from any claim on the part of the mortgage company, the holder of the sheriff's certificate of sale.

The bank that put the plaintiffs into possession of the premises became insolvent in the early part of 1933, and the state supervisor of banking, taking charge of its affairs, appeared in the present case as the successor in interest of the bank. Other parties were made defendants, including the mortgage company, which claimed to succeed to the landlord's share, or the lien of the landlord upon the proceeds of the crop.

Upon issues framed, the case was tried and judgment entered, substantially, among other things, giving the plaintiffs the money and receipts in question, subject to a certain amount as a balance due the state supervisor of banking, or its vendee or successor in in-

terest, upon an adjustment of the account and equities between Dunlap & Geiger and the bank and its successor, on account of a partial failure of consideration of $2,000 cash and the $3,500 note given to the bank.

The judgment also provided that the mortgage company had a good and valid lien, pursuant to Rem. Rev. Stat., § 602 [P. C. § 7917], upon one-third, or 5,906 bushels of the wheat, to the extent of $7,352.11, balance due on interest and taxes (stating the several items of each included in that amount), provided the mortgage company shall bear its pro rata part of certain expenses, charges, and court costs. The plaintiffs have appealed from only that portion of the judgment in favor of the Northwestern Mutual Life Insurance Company.

In discussing the applicability of Rem. Rev. Stat., § 602 [P. C. § 7917], to this case, counsel for appellants argue, as we understand, that, in deciding which particular portion of the section controls, consideration must be given to *equities* in favor of appellants on account of a partial failure of consideration of $5,500 they paid to the bank in part for a term of years they did not get, and also more than they would otherwise have paid for the personal property they received from the bank. But the owners of the land had nothing to do with that transaction. Appellants' loss in that respect was caused by the bank with which they dealt, and was taken care of by the judgment entered in the case, which adjusted the account between the appellants and the bank or its successor in interest, from which part of the judgment no appeal has been taken by the appellants.

Upon the principal argument made on the appeal, appellants stress the fact that they were not made parties to the mortgage foreclosure suit. How were they harmed? The rights of the mortgage company

under the judgment in this case are not contrary to any rights appellants had or would have had as to possession of the property, nor as tenants in the crop or the proceeds of it.

Appellants cite *Farmers State Bank v. Chick,* 143 Wash. 614, 255 Pac. 915. That case, however, is not in point. In that case, the administrator of an estate having a one-third interest in a farm was not made a party to a mortgage foreclosure suit, and it was held that one-third of the crop belonging to the administrator, produced during the period of redemption, was not subject to the lien provided by Rem. Rev. Stat., § 602 [P. C. § 7917], basing the ruling upon another statute giving the administrator the possession of all the real and personal property of the deceased and the right to receive the rents and profits from the real estate until the estate shall be settled and delivered over.

The facts in the instant case are entirely different. Here, the persons entitled to the one-third rental, whose rights were analogous to those of the administrator in the case of *Farmers State Bank v. Chick, supra,* were made parties and their rights foreclosed. Here, the plaintiffs had no right, title or interest in the one-third of the crop, and there was no necessity for making them parties to the foreclosure suit. Failure to make them parties did not bar the mortgage company from claiming the lien upon the landlord's share of the crop for the purposes for which it was allowed. Had the mortgage company sought to subject the two-thirds of the crop or its proceeds belonging to the appellants to its lien, then the situation would have been different.

This case, being a suit by tenants, is controlled by that part of Rem. Rev. Stat., § 602 [P. C. § 7917], construed in the case of *Mount v. Rockford State Bank,* 134 Wash. 479, 236 Pac. 82, which was a real estate

mortgage foreclosure and sale, the sale occurring prior to harvesting the crop. In holding that the purchaser who received the sheriff's certificate of sale had a preference right to the extent of interest and taxes, the court said:

"Section 602, Rem. Comp. Stat. [P. C. § 7917], after providing generally that the purchaser from the date of sale shall be entitled to the possession of the property purchased during the period of redemption, contains this proviso:

" 'Provided further, that as to any land so sold which is at the time of the sale used for farming purposes, or which is a part of a farm used at the time of sale for farming purposes the judgment debtor shall be entitled to retain possession thereof during the period of redemption and the purchaser or his successor in interest shall if the judgment debtor do not redeem have a lien upon the crops raised or harvested thereon during the period of such possession for interest on the purchase price at the rate of six per cent per annum during the period of possession and for any taxes with interest: . . .' "

What has been said above renders a discussion of other assignments unnecessary.

Judgment affirmed.

MILLARD, C. J., STEINERT, BLAKE, and HOLCOMB, JJ., concur.